Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Edgar Quintana-Ramos. Your honors, Mr. Quintana's due process rights were violated at his prior deportation hearing when the immigration judge failed to afford him eligibility for voluntary departure based on an apparent categorical policy against granting such relief to any alien who had suffered a criminal conviction. This court has explained that as a general rule the existence of discretion requires its exercise and that when a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised. And that is what happened here. I had a question about that. The I.J. told Mr. Quintana that the only relief available was voluntary departure. Now even if the I.J. did not exercise his discretion to grant voluntary departure, would that include that the I.J. indicated that relief was not available in any circumstance, which is what you asserted in your brief? Well, because what the I.J. said here was that while he may technically qualify for voluntary departure, and that would be the only potential grounds of relief that he might qualify for, I do not grant voluntary departure in cases because people who reside in the United States illegally should not violate this country's criminal laws. He said that on two different occasions in saying why Mr. Quintana could not receive voluntary departure. That was the judge, in fact, expressing this categorical policy. At no point did the court give Mr. Quintana the opportunity to make a record as to the equities he could present to establish voluntary departure, because the court said, I've decided already you don't get voluntary departure because I don't believe people who commit crimes qualify for voluntary departure. Nonetheless, he said relief was available through voluntary departure, did he not? Well, he said it as a, I believe, as a technical matter, yes. He obviously didn't like people who committed crimes they shouldn't be in the United States, but it's quite different than saying there is nothing available to you. Well, that's certainly true. I mean, right, that's certainly true. But I believe based on the court's language, the court was in fact expressing a categorical policy. And because of this categorical policy, no discretion was exercised by the immigration judge. And given that there was no discretion exercised, Mr. Quintana didn't have the opportunity for voluntary departure. The judge went into the court and said he said, after he says that no one living in the United States should, illegally should violate the country's criminal laws. He says, decision on voluntary departure was because of the defendant's conviction for cruelty to a child, that the child was 15 months old, that he had served six and a half months in jail. He went just beyond criminal record. This qualifies you on not going any further. He looked at that record, which is not a picture. I'll certainly concede that point. I read this as the immigration judge simply stating what his criminal history was, what his conviction was, so that there was no question that he had suffered a conviction. This is what the conviction was that he suffered. And as a result, you don't qualify for voluntary departure, in my mind. You said a minute ago he was not allowed to present evidence that would have been helpful to him? Well, what the judge, in fact Well, the judge didn't consider it. Well, the judge never, the judge said, well, you qualify for voluntary departure. I believe the word was eligible for voluntary departure. I will not grant voluntary departure because of your conviction. I understand what you say is wrong with what the judge said. But I thought you were saying more than that, and I'm not sure you meant it. I thought you were saying that because of that, Mr. Quintana Ramos could not present the positive features that would have entitled him to. Well, what this court How was he prohibited in this hearing from submitting the evidence that would have been helpful to him? What this court has talked about in various cases is that when an I.J. has a certain type of belief, that one of the problems with that is that the individual is not given an opportunity to make a record of facts that could qualify him for a certain type of belief. And I'm submitting that based on this record, since the judge said I'm not going to consider it because of this conviction, Mr. Quintana was not in a position to then let the court know of the various other equities that might exist to qualify for voluntary departure. Is there anything in the record to show what those other equities are? Not in the record at the deportation hearing, but the record before the district court in the motion to dismiss. Then it doesn't really matter because we're looking at what the record is now as to whether Correct. We're looking at what the record is now and not just what was before the immigration judge. Right. And now we're back again to the issue of prejudice. Right. And this record is a troubling record. And the question, I suppose, is whether or not the record is so troubling that it trumps the positive factors that you describe. Well, and I guess this goes to, based from the last argument, what's the standard? What does plausible mean? It's my position that, based on looking at all of the case law from this court, essentially it's whether no reasonable jurist could grant relief from deportation based on the record before it and the record that we have now established. And if there is, and I do believe it is in fact any possibility at that point, is the most bleeding heart immigration judge going to possibly grant relief here? Now, if there's no possibility that any judge could possibly do it on the record, then it's not plausible. But if there's a chance that an immigration judge could grant relief, then I believe that there are sufficient equities. And I think then you just have to look, are there any equities that could have been presented? And I don't think that at this point in the process, on a motion to dismiss, that you actually then try to put yourself in the place of the immigration judge and try to balance those equities and figure what you as a judge would do, but whether any judge could possibly do it. And I believe that there are equities here. The fact that he had been here for a number of years, that he did have a U.S. citizen wife and a U.S. citizen daughter, that those, in fact, are equities in his favor. Is this the wife that he had? Is it a suspicion he may have murdered? No, Your Honor. That counts against family ties. No, this is his second wife. Oh, okay. Is that still okay? Yes, Your Honor. Okay. Yes, Your Honor. So, I believe that there are certainly equities in this record that could have justified relief. Now, certainly, I will concede that there are some negative things in this record that, on balance, an immigration judge may have said, no, I'm not going to exercise my discretion to grant relief. But the question is not whether that's the case, but whether an immigration judge might have granted relief. And I believe that, on this record, that's certainly a possibility. It's certainly plausible. Why is it improper for an immigration judge to consider the fact that you recommended a 24-month sentence because Mr. Quintana's crimes were far more serious than several aggravated felonies, and the district court considers several facts specific to your client to assess his history and characteristics, you seem to indicate that that comparison was improper in your brief. Why would that be improper? Well, I raise that in terms of why I believe his sentence was unreasonable in this case. I did not make that argument with respect to his motion to dismiss, which I believe then you, in fact, have to look at what the state judge imposed here. The state judge imposed a probationary sentence. So, what we have here is the judge who actually looked at the case that was before him and said, based on this record, I think a probationary sentence is all that this crime warrants. And while a later judge in our particular case said, well, I think it's more aggravating than that, and that's why I'm going to give him an above-guideline sentence, as far as the motion to dismiss is concerned, you know, I think that it shows that the equities are perhaps not as — that that situation is not as negative a factor in the analysis. And with that, I'd ask to reserve the balance of my time. Thank you. Thank you. We'll give you a minute or two. Thanks, John. Good morning, Your Honors. Benjamin Barron, United States, and I please the Court. In order to succeed on a Section 1326D claim, the defendant must establish — the defendant must establish that he waived his administrative remedies, that he suffered a due process violation, and that he was prejudiced by that due process violation. On each one of those independent grounds, the defendant's claim fails. And I'll begin with the exhaustion issue, because I believe that's where the The defendant does not dispute that he was fully and adequately apprised of his rights to appeal by the immigration judge. The immigration judge told him he had a right to appeal, told him his decision would not be final if he exercised that right, and said that if he did not exercise that right, he couldn't later change his mind. And then immediately, immediately after addressing really the only issue in the  defendant and said, I explained your right to appeal. Do you wish to exercise it? And the defendant unequivocally said, no. And it is because of that the defendant's 1326D claim necessarily fails, regardless of everything else at issue in this case. Now, the defendant says that his waiver of appeal was not knowing and voluntary, and I think the words that the defendant uses in his brief are key to showing why his argument is wrong. He says that the IJ told him that he could not — those are his words, could not receive voluntary departure because of his prior conviction. But those words could not, cannot, may not, those were not words used by the immigration judge in this case. As Your Honor noted, the immigration judge said that voluntary departure was available in this case. And the immigration judge used the words, I will not grant voluntary departure. I believe — The problem we have here is that the immigration judge also said the people who reside illegally should not violate the country's criminal laws. I will, therefore, order you removed. And the question is how do we know he exercised his discretion rather than associate a categorical rule that those before him with criminal convictions must be removed? Yes, Your Honor. That cuts to the due process violation issue. And I would just begin my answer to that question by saying that regardless of that due process issue, the defendant still waived his right to appeal. And the defendant was well aware of his availability of appeal and chose to waive it. And I'll turn to that due process issue. I think the defendant's claim on that issue fails on three independent grounds. And I'll start with Your Honor's question, which is that the defendant characterizes that application of a categorical rule, even assuming that happened here. And I would submit that it did not. But even if it did, that wasn't itself an exercise of discretion. The immigration judge said you've been convicted of this crime of child abuse. I don't believe that people who have been convicted of this crime, or even if the immigration judge said any crime, that those people should not receive voluntary departure. That is an exercise of discretion in itself. And it is because of that that the defendant has no due process right to that favorable or adverse grant of voluntary departure to that exercise of discretion. That is, due process claim necessarily fails. There's no due process error. But I would also disagree. He says any crime. The people who reside in this country illegally should not violate this country's criminal laws. Yes, Your Honor. He's not suggesting that there's any wiggle room at all. He's saying you have this conviction. We're not even going to talk about the nature of it. I deny you voluntary departure. Yes, Your Honor. I believe that the immigration judge said other things that are relevant to understanding what the immigration judge's decision was, which is, first, the immigration judge twice noted in rendering his decision that the specific nature of the conviction, first of all, that it was a felony, and second of all, that it was a felony conviction for child abuse. And then, as Your Honor noted, he asked the defendant specifically what the age of the child was, 15 months, and the defendant affirmatively confirmed that the child was 15 months old at the time of the child's injury and death. The immigrant – that – those facts bore no relevance to the hearing whatsoever except to inform the immigration judge's decision on voluntary departure. So I would submit that the immigration judge relied on more than that. But my ultimate point is that even if the immigration judge said you've been convicted of a crime, I don't think people who were convicted of crimes should receive this privilege, this privilege of voluntary departure. That is an exercise of discretion. And it may be an exercise of discretion with which Your Honors disagree, but it is nevertheless an exercise of discretion, and it is one over which the defendant has no due process rights whatsoever. Tovar Landon makes clear that voluntary departure is a privilege and not a right, and the defendant, in order to successfully raise the 1326d claim, must demonstrate a due process violation. But once he got past that eligibility threshold, once he was found eligible, he had no right whatsoever to a favorable or adverse decision as to voluntary departure. So I would submit that the defendant's claim simply fails for that reason. And I also think the question of whether there's a plausible possibility of prejudice. Yes, Your Honor. Again, as noted, as I noted, I do believe that these are all alternative reasons that the defendant fails. But turning to prejudice, what positive equities are present in this case? I would ask you that. I know I'm the one who's answering questions. I wouldn't ask her. I would rhetorically. The defendant, and I compare this case to Your Honor's decision in Polaris-Golan. That's the second time. I must have had two beds. I do think that the facts in this case, when compared with that case, the striking differences are present, which is that unlike that case, the defendant in that case had been present in the United States for 24 years continuously. The defendant's convictions were at most misdemeanors. The defendant had a family history and a family that he was supporting in the United States. Here the defendant had left the United States on multiple prior occasions, including after the murder of the defendant's wife, for which the evidence certainly implicates that the defendant had some role in that. But even putting that aside, the defendant had six years of residence in the United States. The defendant had been convicted of a serious crime that the district court rightfully characterized as despicable, despicable the conditions under which this child was allowed to live, evidence that the child was abused. The child had been, his leg was broken two weeks before his death, and his lips were burned by an electrical wire that the defendant admitting allowing the child to be exposed to. And once the child was burned by the electrical wire, the defendant never contacted the authorities. He never sought help for the child. And by his own words, it was because he didn't want to get caught. The defendant has, the defendant's residence years substantially less than the Polaris Galan. He cannot reasonably cite to his family as a factor, not after the conditions that that child was allowed to live under. His daughter was taken from him by child custody services. He cannot claim his daughter as a positive equity. And given the way he and his wife allowed that child to live, the child who died, I don't think he can claim his relationship with his wife as a positive equity here. So I would submit that there really are no positive equities here. But even if there are, the conditions under which this child was allowed to live are so despicable that there is simply no plausible ground that an immigration judge would have given him voluntary departure based on those facts. And I'll just turn to the sentencing issue with the remainder of my time. And I want to make two points, which is, first of all, for procedural grounds, the procedural issue, the only question is, were there sufficient facts presented by the district court judge to allow meaningful review? And I would submit that the record is clear that there is, which is why we're able to turn to the substantive issue as well. And I would, as to the substantive issue, whether the district court's sentence imposed was substantively reasonable, I would make two points. And one is a point that I didn't make in my brief. And that is that under the case of Amespa-Vazquez, that's 567F3-1050, that's a case cited by the defendant but not by the government, this Court made clear that under 2L1.2, the sentencing guideline that applies, there's a schedule of enhancements that apply based on the severity of a defendant's prior convictions. In that case, the defendant was subject to a plus 16 on the guidelines for a prior crime of violence, and there was no dispute that those guidelines calculations were correct. This Court held that under Booker, the district court was obligated, it was unreasonable for the district court to impose a guideline sentence because of the staleness of the defendant's prior convictions. What that suggests is that that decision cuts both ways. A district court judge is just as permitted to say that your placement on this schedule of enhancements doesn't adequately reflect the severity of your crimes. And under Booker, even though the guidelines call for a plus 4, I'm going to treat this as a plus 8. So even accepting the defendant's argument as true, his claim still fails. But the defendant's characterization of the district court's decision is false. The district court judge did not say, I believe the guidelines don't, that you should be entitled to a plus 8 versus a plus 4 enhancement. Immigration, I'm sorry, I'm misspeaking. The district court judge specifically grounded his decision as to the sentence on the facts of the case and on the facts of the case as they related to its history and characteristics. Those are the explicit words of the district court's opinion. The government would submit that the district court judge could have imposed a far greater variance than imposed here. And under Cardee, this Court must consider the extent of the variance imposed in determining whether the district court judge's sentence was reasonable. An eight-month variance, well, any sentence variance is a – Under Booker, that is correct, Your Honor. Well, under Booker or under anything. I mean – That's correct, Your Honor. District judges can give lower sentences than the guidelines say. Yes. And we shouldn't be reversing them because they're giving less than a guideline sentence. Yes, Your Honor. The question is whether the district court judge's sentence was reasonable. And under these facts, an eight-month variance is certainly reasonable, Your Honor.  I want to conclude my points by the fact that the district court judges are their  In my case, I've had no problems with my own counterparts. So I would just conclude just by saying again, because of the 3 reasons noted, failure to exhaust, lack of a due process violation for this privilege of voluntary departure, and lack of prejudice, the Defense 13-2060 claim necessarily fails on any one of those grounds. Thank you. If there are questions, I'll submit. Thank you. Your Honor, just briefly, since opposing counsel brought up the issue of the appeal and whether, in fact, he had actually appealed. This Court has said that an alien is not required to exhaust his appellate rights where he has not had a considered and intelligent waiver. And when the record contains an inference that he's eligible for relief from deportation, which we have here, but the immigration judge fails to advise him of this possibility and give him the opportunity to develop the issue, and that's from Murrow and Klan, then it's not a considered intelligent waiver. We would also note that this Court has said that explaining a right to appeal to a defendant is not sufficient to inform an individual of his appellate rights. And that's the only location where Mr. Quintana was, in fact, advised of his appellate rights. It then, when it came down to the individual colloquy, it was simply, earlier today I explained to you your right to appeal. Do you want to appeal? That's not an explanation to, an individual explanation to Mr. Quintana of his waiver of those rights. So we believe he was not required to exhaust, and that he was, in fact, deprived of a meaningful opportunity for judicial review. And unless the Court has any additional questions on the other issues, I would submit. Thank you, counsel. Thank you, Your Honor. The next case on the calendar, U.S.D. Mejia Soto, has been submitted on the briefs. And the final case of the morning, Rossum v. Patrick.
judges: Gertner, Nelson D. W., Reinhardt